KNOLL, Judge.
Defendant, Larry Crowe, appeals the trial court’s judgment in favor of plaintiff, B.D. Johnson, "finding that Johnson had a valid sublease from Crowe on approximately 2,200 acres located in Catahoula Parish for the duration of Crowe’s base lease from Tensas Delta Land Company on approximately 9,600 acres. The sole issue on appeal is whether there was a meeting of the minds on the term of the sublease agreement. We affirm, finding no manifest error in the trial court’s factual determinations.
FACTS
We have been favored by the learned trial judge’s excellent written reasons for judgment thoroughly setting forth the facts, which we incorporate herein:

“Tensas Delta Land Company owns a tract of approximately nine thousand six hundred acres in Catahoula Parish and had executed an agricultural lease on it to one Joe Kelly. In the last years of this lease, Defendant [Crowe] negotiated a sub-lease with Kelly and at the same time obtained a letter of intent on September 21, 1976from Tensas Delta to the effect that Tensas Delta would execute a new lease to Defendant at the expiration of the Kelly lease on January 1, 1978.

Plaintiff [Johnson] was not an original party to any of these proceedings, but was on the scene and became involved with the Defendant shortly after the original negotiations were undertaken. The record is not exactly clear as to exactly how Plaintiff and Defendant proceeded, but it was my impression from hearing the evidence that the eventual agreement between Plaintiff and Defendant came about through a process of evolution as evidenced by their course of conduct for several years.

It was apparent that Defendant required some assistance in farming this large tract of land and the Plaintiff was assisting him in this endeavor. In fact, they did have a farming partnership operation for one year. The farming partnership between Plaintiff and Defendant lasted only one year and Plaintiff began to farm that portion of the property south of Ruddles Road through farmers from Mississippi which he recruited. These farmers from Mississippi, Gardner, Payne and Madden, all testified in the case and it was absolutely clear from their testimony that they were dealing with the Plaintiff as his sub-lessees. They understood that Plaintiff had a sub-lease arrangement with Defendant, and it was also clear that none of these farmers came from Mississippi with the idea that they would be coming on a short term basis. While they had very little to do with the Defendant, they testified that before coming here, they did confer with Plaintiff and Defendant and Defendant advised them that Plaintiff was his partner. Defendant was fully aware of the fact that these parties thought Plaintiff had a long term arrangement on the land, and that they would be acquiring long term committ-ments [sic] on the land through Plaintiff

This understanding between Plaintiff and Defendant was further evidenced by the fact that both Plaintiff and Defendant executed a sub-lease for a five year period to Payne (Exhibit No. 4). At no time did Plaintiff ever have any written sub-lease from Defendant, and the lease from Tensas Delta was in Defendant’s name.”

TERM OF THE SUBLEASE
The central issue in this case concerns a factual determination as to the term of the sublease. Therefore, to reverse the factual findings we must find that the trial court *1067 committed manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Crowe contends that Johnson had a year-to-year sublease on the property south of Ruddles Road, which Crowe legally terminated; therefore, Johnson had no further interest in the property. Johnson contends that he had an interest in the Tensas Delta lease from the beginning and that he agreed to accept the property south of Ruddles Road as his portion; he subsequently improved the land and began a farming operation by subleasing it.
In making its factual determination as to the term of the sublease, the trial court stated in its oral reasons:
“... I’m ready to rule from the bench ...on the fact question ... We don’t have any questions of law or anything to proceed with. As I indicated ...at the beginning, I believe the issue as I see it has been distilled to the issue of really what was the term of the sublease or assignment ... that Mr. Crowe gave to Mr. Johnson in 1978 ...of the Tensas Delta lease. The .. the other problems here .. if we had the problem of establishing .. of course, the law allows us, as the Civil Code Articles indicate, verbal testimony can establish existence of a lease or a sub-lease. A sub-lease is a lease. But we don’t have to face that problem because all .. both parties are in agreement that there was a .. in effect .. a sub-lease as to this south of Ruddells fsic] Road property ^ Mr. Crowe himself has said that several times. So the question is ... what was that term of that? Did Mr. Johnson get the sub-lease of that property south of Ruddells fsic] Road for the term of the Tensas Delta lease or did he get it on a year to year basis? Now that’s the question that is determinative in this case and the Court has to decide. In my opinion, the preponderance of the evidence here shows that it was for the term of the lease. I would have to say that the evidence here is not really that clear.... I would have to say that there .. while not controlling that issue, that there is at least a precedent set by the Kelly lease as to what Mr. Johnson may have ... thought. Mr. Crowe, in his testimony recently he testified .. and I thought this was somewhat controlling here .. that at the time he made the deal with ... Mr. Johnson .. and there’s a remarkable similarity between the testimony of the two as to the terms of that. This is at the time that they agreed that Mr. Johnson was to go south of Ruddells [sic] Road. That Mr. Crowe never dis-cussed_ that they had never discussed the terms of the deal with Mr. Johnson at that time. That he assumed from that point on it would be a year to year contract, which he is probably correct on that, but he assumed that. And he said that probably Mr. Johnson believed that it would be more than a year to year deal. And I think he’s correct on that. They never either one of them set [sic] down and brought the problem to a head at that point. Now the question is ... whether or not Mr. Johnson, of course, was justified in assuming that and going back to the Kelly precedent of the ... fifty-fifty deal and .. further you have an indication there that Mr, Johnson got more than just a year to year deal on the fact that the two five year term leases were executed .. at least two .. and the Court accepts the testimony of the gentleman from Mississippi here who did not actually have the written lease in front of him. I think he testified truthfully to that effect ... [W]e do have one of them [a lease] that was in writing in which both Mr. Johnson and Mr. Crowe were named as lessors. And the question there is not so much, it appears to me, as why Mr. Crowe signed the lease because obviously he had to sign it. The written lease was in his name_ That flies into your face as to why Mr. Crowe had to sign it for this man [Johnson] to give him [Mississippi lessee] five years on it, but the other question is why did Mr. Johnson have [sic] to sign it if he didn’t have five years on *1068 it .. more than the year to year deal. In other words, .. in other words, this was all verbal and Johnson wouldn’t have had to appear on that at all. But .. of course, he made the deal with the gentleman and his signature was on it and necessary. In other words, the question is why maybe Mr. Crowe made a mistake or maybe he didn’t realize this. He testified to that effect. But that certainly adds additional evidence and additional weight to the .. what appears to me that this was more than just a year to year deal between the two, now, as to the proyerty south of Ruddells fsic] Road.... [T]he real question is why Johnson had to sign that sub-lease rather than why Mr. Crowe had to sign it in view of the fact that the original lease was in Mr. Crowe’s name. But I won’t go over that_ [TJhere was other evidence .. small items throughout the thing, none of which was controlling in and of itself, which indicated to me that the parties continued this to be a .. a long term arrangment [sic] rather than the year to [year] deal. Of course, you have the discussions with the two farmers at the time. This was .. they were riding over the area. Mr. Crowe’s testimony was that the partnership references had to do with .. deal with the existing farming partnership, which was separate, but which was terminated by both ... and clearly understood it was terminated at the end of ’76. Mr. Johnson made it known that he was not interested in farming any more ... the point ... here is he clearly was not interested in farming any more and Mr. Crowe was aware of that ... now that’s ... my impression of what I’ve heard now. Mr. Henry, if you want to, I’ll .. prior to making that a final opinion and judgment on that, since the opinion .. since the decision goes against you on that, I would give you some time to write me a memorandum on that. ” (Emphasis added.)
The learned trial judge then held in his written reasons for judgment:

“I have carefully read the memoranda, particularly that submitted by the Defendant, but I remain of the opinion expressed at the termination of the trial that Plaintiff, Johnson, has an oral sub lease from the Defendant covering that portion of the Tensas Delta lease south of Ruddles Road.

Defendant’s principal defense to this claim is based upon Article 1779 of the Louisiana Civil Code setting out the four requisites of a valid contract and Article 2670 of the Civil Code listing the elements of a lease. Defendant particularly argues that there was no agreement in this case because there was no meeting of the minds or mutual consent which is one of the requisites of a valid contract.

Defendant admits the existence of the oral sub-lease, admits to all of the elements of the contract, and in fact admits the existence of the contract of sub-lease between him and Plaintiff. What Defendant is really saying is that there was, in fact, a contract of sublease between the parties, but there is a disagreement as to it’s [sic] interpretation as to the term or period of time during which it existed. Defendant is alleging that the term or period of contract was on a year to year basis, while Plaintiffs position is that the term or period of the contract was concurrent with the terms of the base lease from Tensas Delta.

Accordingly, there was a legal contract of sub-lease between the parties to which Defendant admittedly gave his full consent, and under which he operated [for] a number of years. Even in the absence of Defendant’s admission that a contract of sub-lease existed, his consent could be implied under Articles 1780, 1811 and 1816 of the Civil Code.

Nevertheless, the conflict in this case arises over the interpretation of admitted contract. The evidence, in my opinion, clearly preponderates in favor of 
*1069
the interpretation urged by the Plaintiff-

Defendant did not raise the question of the year to year term until the contract had been in existence for a number of years and he decided to terminate it by the letter addressed to Plaintiff At no time prior to this had Defendant ever indicated that he had this interpretation of the contract. In fact, for the reasons orally stated at the end of the trial and set out briefly here, all activities of the [Defendantl up until his letter of termination, indicated that he interpreted the contract exactly in the same manner as did the Plaintiff. That is, that the Plaintiff had a sublease on that portion of the Tensas Delta property south of Ruddles Road for for a term concurrent with the term of the base lease.

Defendant’s sudden change in his course of conduct relative to the lease comes too late.

The principals set out in Civil Code Articles 1956, et seq, when applied to the facts of this case also favor Plaintiffs position. ” (Emphasis added.)
It is well settled that a reviewing court must give great weight to factual conclusions of the trier of fact and should not disturb factual findings in the absence of manifest error. Fourroux v. North-West Ins. Co., 462 So.2d 1327 (La.App. 3rd Cir. 1985), writ denied, 465 So.2d 739 (La.1985); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
After a careful review of the record, we find that Johnson had a valid sublease from Crowe on the property south of Ruddles Road, and that the term of the sublease was concurrent with the term of Crowe’s base lease from Tensas Delta Land Company (January 1, 1983 through December 31, 1987). We likewise find that the record supports that the learned trial judge did not commit manifest error.
For the foregoing reasons, we affirm the judgment of the trial court. All costs of this appeal are assessed to the appellant, Larry Crowe.
AFFIRMED.